IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| TAMMY R. BELCHER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 07-346-HO |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| SUNDAD, INC., an Oregon corporation, | ) | |
| the F/V SUNDAD, and ALASKAN OBSERVERS, | ) | |
| INC., a Washington Corporation, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff brings this action alleging negligence, and unseaworthiness. Plaintiff's negligence claims apparently include a claim pursuant to the Jones Act, 46 U.S.C. § 30104. Defendants Sundad, Inc. and the F/V Sundad seek summary judgment with respect to plaintiff's Jones Act and unseaworthiness claims. (#29) Defendant Alaskan Observers Inc. (AOI) seek summary judgment on all claims currently alleged against it. (#17) Plaintiff seeks to amend the complaint to add claims for breach of contract, breach of

third-party beneficiary contract, estoppel, and misrepresentation against defendant AOI. (#53)

The F/V Sundad is a 55-foot trawler fishing vessel that uses a long net. During the trawling process, the Sundad's net captures the target species as well as other types of marine life and assorted debris. To account for and regulate the impact of fishing on non-target species, commercial vessels in this fishery are required to accommodate observers when selected. The Sundad was ordered to take an observer on the voyage in question.

AOI employed plaintiff as a fisheries observer aboard the Sundad which is owned by Sundad, Inc. AOI provides observers aboard fishing vessels in Alaskan and west coast waters to gather information about target and prohibited species.

AOI contracts for observer services with Pacific States Marine Fisheries Commission (PSMFC) which is responsible for managing commercial fisheries off the west coast. The contract affirms federal regulations requiring observer training and instruction to be given by the National Marine Fisheries Service (NMFS).

Observers must complete a NMFS provided west coast groundfish observer program training to be certified for sea duty. In addition, AOI required plaintiff to attend a pre-employment physical exam and upon exam by her physician, plaintiff's doctor declared that she had no conditions or problems that would prevent

her from performing her duties.[1]  Plaintiff did not consider herself an employee of the Sundad, nor did Sundad Inc. hire or pay plaintiff.  Plaintiff's duties aboard the Sundad were limited to her duties as an observer.

Plaintiff's duties included lifting and placing bycatch baskets on a scale.  Plaintiff alleges that she lifted an unexpectedly heavy basket, when the vessel rolled over a wave and snapped back causing two discs in her back to rupture.  Plaintiff alleges that negligent operation and maintenance of the vessel, and failure to warn and provide safety rules caused her injury.

A.  Motion for Partial Summary Judgment (#29)

Defendants Sundad, Inc. and the F/V Sundad move for summary judgment contending that plaintiff's Jones Act claim fails because she was not an employee of the Sundad and because she did not have seaman status.  In addition, defendants Sundad, Inc. and the F/V Sundad contend that lack of seaman status precludes plaintiff's unseaworthiness claim.

---

[1] Plaintiff does contend that there was contractual obligation for AOI to provide its own physician to conduct the exam and that while her doctor did state she could perform the job, he also informed AOI that she had past degenerative disc disease.  It is unclear if plaintiff seeks a finding that she was unfit for the job based on the past degenerative disc disease or just how AOI was negligent for failing to do something with the information despite her own physician's opinion that she was fit to do the job she admits was adequately explained to him.

3 - ORDER

1.  Jones Act Claim

Plaintiff now contends she had two employers; AOI and Sundad, Inc.  Defendants Sundad contend that the undisputed evidence establishes that plaintiff was not an employee of Sundad.

To recover under the Jones Act, plaintiff must show that defendants employed her at the time of injury.  <u>Glynn v. Roy Al Boat Management Corp.</u>, 57 F.3d 1495, 1498 (9th Cir. 1995). Generally, whether an employer/employee relationship exists is a question of fact so long as there is some evidentiary basis for considering the relationship exists.  <u>id</u>.  Where no reasonable juror could conclude that an employment relationship existed or did not exist, then the issue can be determined as a matter of law. <u>See</u> <u>id</u>. at 1499.  To determine Jones Act employment:

> "[o]ne must look at the venture as a whole. Whose orders controlled the master and the crew? Whose money paid their wages? Who hired the crew? Whose initiative and judgment chose the route and the ports?" <u>Cosmopolitan</u>, 337 U.S. at 795, 69 S.Ct. at 1323-24. The Third Circuit similarly focuses on the degree of control exercised over the crew member and looks to factors such as payment, direction, supervision, and source of the power to hire and fire. <u>Matute v. Lloyd Bermuda Lines, Ltd.</u>, 931 F.2d 231, 236 (3d Cir.), cert. denied, 502 U.S. 919, 112 S.Ct. 329, 116 L.Ed.2d 270 (1991).

<u>Id</u>.

Moreover, for purposes of the Jones Act, there can be only one employer.  <u>Id</u>. at 1500.

Plaintiff's admission that AOI was her employer forecloses her Jones Act claim against the Sundad defendants.  Additionally, the

4 - ORDER

referenced factors can not reasonably establish that the Sundad defendants employed plaintiff. The undisputed facts establish that AOI paid plaintiff, that AOI hired plaintiff, that AOI paid her insurance, and that the National Marine Fisheries Service (NMFS) trained plaintiff. <u>See</u> Deposition of Tammy Belcher (attached to the declaration of Noah Jarrett (#32) as Exhibit 1 (#33)) at p. 73 (understood through AOI that training came through NMFS), p. 144 (employed by AOI, not Sundad), at p. 145 (Sundad did not hire or have the power to fire and did not pay plaintiff). Accordingly, summary judgement is granted in favor of the Sundad defendants on the Jones Act claim.

In addition, a Jones Act claim requires that plaintiff have seaman status. 46 U.S.C. § 30104 (seaman injured in the course of employment may bring a civil action against the employer). The essential requirements for seaman status are: (1) the employee's duties must contribute to the function of the vessel or to the accomplishment of the vessel's mission; and (2) the employee must have a connection to a vessel in navigation that is substantial in terms of both its duration and its nature. <u>Harbor Tug and Barge Co. v. Papai</u>, 520 U.S. 548, 554 (1997). Despite plaintiff's claim that the observer program is legally required for the vessel to operate, she did not contribute to the function of the vessel and she did not have a substantial connection either in its nature

5 - ORDER

(commercial fishing or navigation)[2] or in duration (she was only assigned to the Sundad briefly).[3] Simply because the law requires the observer, it does not grant seaman status to plaintiff. See O'Boyle v. United States, 993 F.2d 211, 213 (11th Cir. 1993) (legal requirement through treaty for observer to be aboard fishing vessel did not confer seaman status).[4]

### 2. Unseaworthiness Claim

An unseaworthiness claim depends on seaman status as well. See Scheuring v. Traylor Bros., Inc., 476 F.3d 781, 784 n. 3 (2007); Knight v. Longaker, 2007 WL 1864870 at * 4 (N.D.Cal. June 28, 2007).

As noted above, the determination of who is a seaman is a mixed question of fact and law. Chandris, Inc. v. Latsis, 515 U.S. 347, 369 (1995). The interpretation of statutory terms is within the purview of the court, but if reasonable persons, applying the proper legal standard, could differ as to whether the plaintiff was

---

[2] Weighing or recording bycatch was not the mission of the Sundad.

[3] Seaman status is a mixed question of law and fact, but here there is only one reasonable conclusion. See Harbor Tug & Barge Co. v. Papai, 520 U.S. 548, 554 (1997) (summary judgment mandated where facts and law only support one conclusion).

[4] Plaintiff does cite unreported decisions seeming to find seaman status in similar circumstances, but such holdings are not persuasive. Moreover, the facts in those cases demonstrate a deeper connection between the observer and the vessel than presented here (such as monitoring the target species for an entire season at the owner's request).

6 - ORDER

a member of a crew, it is a question for the jury. Id. Also as noted above, seaman status requires that plaintiff's duties must contribute to the vessel's mission or its function and have a substantial connection to its navigation that is substantial in nature and duration. Plaintiff does not meet this criteria, despite a note in the log that there were 3 "crew" members (necessarily including plaintiff). See Declaration of Gordon Carey (#49) at Ex. 8.[5]

Plaintiff attempts to get around the seaman status issue by arguing she qualifies as a Sieracki seaman. However, while the Supreme Court did extend the unseaworthiness doctrine beyond seaman to those who render a vessel, such as stevedores with the owners consent or by his arrangement, Seas Shipping Co. v. Sieracki, 328 U.S. 85 (1946), Congress overruled the extension in its 1972 Amendments to the Long Shore and Harbor Workers' Compensation Act. The Court has declined to extend it further:

> The Court extended the duty to provide a seaworthy ship, once owed only to seamen, to longshore workers in Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). Congress effectively overruled this extension in its 1972 amendments to the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq. See § 905(b). We have thus far declined to extend the duty further. See Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 629, 79 S.Ct. 406, 409, 3

---

[5] The only space to note the number of people on board in the exhibit is under the heading "Crew Size (including Captain)." Plaintiff herself stated that she did not consider herself a member of the crew. Belcher Deposition (attached to Declaration of Noah Jarrett (#32-35 at Ex. 1, p. 144).

7 - ORDER

L.Ed.2d 550 (1959) (unseaworthiness doctrine inapplicable to invitee aboard vessel).

<u>Yamaha Motor Corp., U.S.A. v. Calhoun</u>, 516 U.S. 199, 208, n. 6 (1996). The Ninth Circuit recognizes that the unseaworthiness remedy granted by <u>Sieracki</u> is no longer applicable. See <u>Nomille v. Meritime Co. of Phillippines</u>, 643 F.2d 1380, 1381-82 (9th Cir. 1981). The undisputed facts portray plaintiff as nothing more than a business invitee on the Sundad and as such she cannot make claims under either the Jones Act or the doctrine of unseaworthiness. Accordingly, the Sundad defendants' motion for partial summary judgment is granted.

B.   <u>Motion for Summary Judgment (#17)</u>

Defendant AOI contends there is no evidence of any action or inaction on its part contributing to plaintiff's accident and/or injuries aboard the F/V Sundad.

The operative complaint alleges negligence claims against defendant AOI in the form of general maritime negligence, unseaworthiness, and a claim under the Jones Act. As noted above, plaintiff does not qualify as a seaman for purposes of the Jones Act and unseaworthiness claims. AOI's motion focuses mostly on the allegations of negligence themselves.[6] AOI's motion for summary

---

[6]AOI does assert that only the owner of a vessel can be liable for unseaworthiness. The cases do refer to the owner and the Ninth Circuit jury instructions also state that a "vessel owner" has a duty
(continued...)

8 - ORDER

judgment is granted as to the unseaworthiness claim and Jones Act claim.

With respect to negligence, AOI asserts it had no legal duty to train or supervise plaintiff when she lifted the baskets aboard the Sundad. As noted above, the NMFS provided the training and AOI could not supervise plaintiff aboard the vessel.

Plaintiff generally concedes that the crew of the Sundad is responsible for the negligence, but contends that AOI assumed liability because it contractually agreed to provide worker's compensation insurance with employer's liability attachment. In addition, plaintiff contends that AOI is liable under an agency theory. Plaintiff contends that under the Jones act, agency liability can extend to actions of an independent contractor with the employer  See Hopson v. Texaco, Inc., 383 U.S. 262, 264 (1966).[7] However, although AOI does not argue the issue of seaman status, the law of the case precludes plaintiff's Jones Act claim even against AOI because the Sundad defendant's motion demonstrates as a matter of law that plaintiff is not a seaman. There is

---

[6](...continued)
to provide a seaworthy vessel. Model Civil Instruction 7.6. The court agrees that AOI cannot be liable under the unseaworthiness doctrine as it was not the owner of the vessel.

[7]See also Ribitski v. Canmar Reading & Bates, Ltd. Partnership, 111 F.3d 658, 662 (9th cir. 1997) (Jones Act claim requires employer or one of its agents to be only slightly negligent and this duty extends to providing a safe place to work on the ship of a third party over whom the employer has no control, if that is where the seaman's employer sends him to work).

9 - ORDER

otherwise no evidence of agency status and, additionally, AOI did not even have independent contractor status with the Sundad as it only contracted with PSMFC, and PSMFC randomly selected the Sundad for observation. AOI had no interest in the Sundad and exercised no control over it.

Moreover, the issue of providing insurance is a contract issue rather than a tort issue. The novel theory that merely providing insurance makes an entity liable for the torts of others is not cognizable. However, the court will allow plaintiff to amend her complaint regarding breach of contract with respect to insurance coverage for the reasons discussed below. AOI's motion for summary judgment as to the claims alleged against it in the current complaint is granted as there is no evidence of negligence on the part of AOI or any evidence to suggest it is liable for the negligence possibly attributable to the Sundad and its crew for purposes of general maritime negligence, the Jones Act or the doctrine of unseaworthiness.

C.   Motion to Amend (#53)

Plaintiff seeks to amend her complaint to add a breach of contract claim, a breach of third-party beneficiary contract claim, an estoppel claim, and a misrepresentation claim against defendant AOI. Plaintiff asserts that it was not until she received discovery materials from AOI (after it filed its summary judgment

10 - ORDER

motion) indicating the full extent of AOI's obligation to provide insurance (no fault) in its contract with PSMFC that these claims became apparent. AOI opposes the motion arguing that the time for amending has passed and plaintiff fails to demonstrate good cause to amend. AOI also contends that the claims are baseless because it has paid all insurance claims.

The motion to amend is allowed since discovery was extended and apparently the deadline for amending was overlooked when the court extended discovery. The discovery that plaintiff contends provides the basis for amendment did not come until after the summary judgment motion had been filed. In addition, it does appear that plaintiff was probably not aware of the no fault insurance until the discovery was provided and she contends that not all of her lost wages have been paid. The motion is granted and should AOI need to conduct additional related discovery, it will be allowed to do so.

## CONCLUSION

For the reasons stated above, the motions for partial summary judgment (#29), summary judgment (#17) and to amend (#53) are granted.

DATED this ___18th___ day of July, 2008.

                                            s/ Michael R. Hogan
                                           United States District Judge